MOSSA, Appellant and Cross–Appellee,

v.

**WESTERN CREDIT UNION, INC., Appellee and Cross–Appellant.**

[Cite as *Mossa v. W. Credit Union, Inc.* (1992), 84 Ohio App.3d 177.]

Court of Appeals of Ohio,
Franklin County.

No. 92AP–502.

Decided Dec. 8, 1992.

*Bidwell & Beachler* and *Jinx Statler Beachler*, for appellant.

*McNamara & McNamara, William H. Woods* and *Lisa Weekley Coulter*, for appellee.

PETREE, Judge.

Plaintiff, Edwin Mossa, appeals from a judgment of the Franklin County Court of Common Pleas granting a directed verdict in favor of defendant, Western Credit Union, Inc. Plaintiff raises the following two assignments of error:

"I.   Whether the trial court committed reversible error in granting appellee's motion for a directed verdict on appellant's breach of contract claim pursuant to Ohio Revised Code Section 1733.20(D).

"II.   Whether the trial court committed reversible error in granting appellee's motion for a directed verdict on appellant's claims for promissory estoppel, fraud, and infliction of emotional distress."

Defendant filed a protective cross-appeal asserting as error:

"Judge Cain erroneously overruled appellee and cross-appellant's motion for summary judgment because appellant Mossa did not present any evidence of an enforceable contract for a two year period of employment and appellant's other claims for fraud, promissory estoppel and intentional infliction of emotional distress are barred as a matter of law under the terms of Section 1733.20(D), R.C."

This matter was disposed of by a motion for directed verdict granted immediately after plaintiff's opening statement. The factual circumstances surrounding this matter are for the most part still disputed by the parties. The few undisputed facts which can be gleaned from the parties' briefs are as follows. Plaintiff was hired on July 16, 1987 to serve as President and CEO of Western Credit Union. On December 7, 1988, he was terminated from this position. Plaintiff filed suit against defendant, claiming breach of contract, fraud, infliction of emotional distress and promissory estoppel. Defendant's answer in part denied the existence of a written or oral contract between the parties and claimed plaintiff's other claims were barred by R.C. 1733.20(D). Defendant moved for summary judgment on all claims. The trial court denied defendant's motion and found defendant had waived its defense of statute of frauds due to its failure to affirmatively plead the defense in its answer. The matter was set for trial. Plaintiff gave his opening statement and defendant moved for a directed verdict. The court granted defendant's motion on all counts of the complaint and dismissed the action. Plaintiff filed a timely appeal.

■ The court initially will address the sole assignment of error raised in defendant's protective cross-appeal. Defendant alleges the trial court erred in overruling its summary judgment motion based on plaintiff's failure to present evidence of an enforceable contract. Defendant additionally argues all other claims were barred by R.C. 1733.20(D). The trial court found R.C. 1733.20(D) did not bar defendant's claims and that defendant waived its statute of frauds defense by failing to plead the defense properly. This court finds that the trial court did not err when it overruled defendant's motion for summary judgment as the trial court properly applied the current law.

The statute of frauds requires certain types of agreements to be in writing. See R.C. 1335.01 *et seq.* Agreements which are not to be completed within one year of their making are to be in writing and signed by the party bound. R.C. 1335.05. The statute of frauds prevents an agreement not to be completed in one year from being enforced unless evidenced by a writing. R.C. 1335.05. The purpose of these statutes is to " * * * prevent perjury and distortion of evidence frequently attending claims falling within this class, and to avoid saddling a party with the burden of an onerous contract without clear and unequivocal proof of the

making of the contract." 51 Ohio Jurisprudence 3d (1984) 230, Statute of Frauds, Section 75.

The statute of frauds is an affirmative defense to a claim. Pleading of affirmative defenses is governed by Civ.R. 8(C), which reads:

"Affirmative defenses. In pleading to a preceding pleading, a party shall set forth affirmatively accord and satisfaction, arbitration and award, assumption of risk, contributory negligence, discharge in bankruptcy, duress, estoppel, failure of consideration, want of consideration for a negotiable instrument, fraud, illegality, injury by fellow servant, laches, license, payment, release, res judicata, *statute of frauds,* statute of limitations, waiver, and any other matter constituting an avoidance or affirmative defense. * * * " (Emphasis added.)

Civ.R. 8(C) is to be read in conjunction with Civ.R. 12(H), which read prior to July 1, 1983, in pertinent part:

"(H) Waiver of Defenses and Objections. A party waives all defenses and objections which he does not present either by motion as herein before provided or if he has made no motion, by responsive pleading or an amendment thereof made as a matter of course under Rule 15(A) * * *."

The Supreme Court held that the affirmative defenses listed in Civ.R. 8(C) were waived under Civ.R. 12(H) if not pled in an answer, motion under Civ.R. 12(B) or pursuant to Civ.R. 15. *Mills v. Whitehouse Trucking Co.* (1974), 40 Ohio St.2d 55, 69 O.O.2d 350, 320 N.E.2d 668. Civ.R. 12(H) was amended effective July 1, 1983 in an effort to "distinguish between waiver of certain Civ.R. 12 motion defenses and waiver of pleading defenses, particularly affirmative defenses, which are raised in the answer and are governed by Civ.R. 8 and Civ.R. 15." Editor's Note, Civ.R. 12, Page's Ohio Revised Code Annotated (Supp.1991) 22. The waiver provisions of Civ.R. 12 now expressly apply only to those defenses listed in Civ.R. 12. The question arises, what then is the current effect of failing to plead Civ.R. 8(C) affirmative defenses in a responsive pleading?

The Supreme Court has addressed this issue in the dicta of *Hoover v. Sumlin* (1984), 12 Ohio St.3d 1, 12 OBR 1, 465 N.E.2d 377. The court stated:

" * * * Civ.R. 8(C) deals with affirmative defenses and states that, in pleading to a preceding pleading, a party ' * * * *shall* set forth affirmatively * * * the statute of limitations * * * ' While the word 'shall' indicates the firmness of this pleading requirement, Civ.R. 8 does not state a time period within which an affirmative defense must be pleaded or the effect of failing to plead an affirmative defense. However, it is clear that some sort of concept of 'waiver' is embodied in the requirement of Civ.R. 8(C) that a party 'shall' raise any affirmative defenses in his answer." (Emphasis *sic.*) *Id.* at 3–4, 12 OBR at 3, 465 N.E.2d at 379.

While an affirmative defense may still be waived by a failure to plead said defense, the court in *Hoover* affirms the proposition that a party may appropriately raise an affirmative defense in an amended pleading pursuant to Civ.R. 15. *Id.* at 5, 12 OBR at 4, 465 N.E.2d at 380. Therein the court stated:

"Indeed, even *after* the trial, Civ.R. 15(B) (as well as the language of our holding in *Mills, supra*) would permit the amendment of the pleadings to reflect issues which were tried, explicitly or implicitly, with the consent of the parties." (Emphasis *sic.*) *Id.* at 5, 12 OBR at 4, 465 N.E.2d at 380–381.

■ It is equally clear that while leave to amend is clearly within the sound discretion of the trial court, "where the defense is tendered timely and in good faith, and no reason is apparent or disclosed for denying leave, the denial of leave to file such an amended pleading or the subsequent striking of a defense from an amended pleading is an abuse of discretion. * * * " *Id.* at 5–6, 12 OBR at 5, 465 N.E.2d at 381. Failure to plead an affirmative defense in a responsive pleading still acts to waive said defense; however, a party has the remedy of amendment of the pleadings set out in Civ.R. 15.

In the present matter, the first time defendant attempted to raise its defense of statute of frauds is in its summary judgment motion. A summary judgment motion is not the proper format in which to raise an affirmative defense. The court finds no indication in the record that defendant ever amended its answer to include this defense or moved the court for leave to amend. The trial court properly found that defendant had waived its affirmative defense at the time of the summary judgment hearing. Reasonable minds could come to differing conclusions as to whether an oral contract between the parties existed. In this circumstance, summary judgment is not proper.

As to what effect R.C. 1733.20(D) has on plaintiff's claims, this court agrees with the trial court that the statute does not act as a bar to recovery. The statute reads:

"Any officer may be removed, with or without cause, by the directors without prejudice to the contract rights of such officer. The election or appointment of an officer for a given term, or a general provision in the articles, regulations, or bylaws with respect to term of office, shall not be deemed to create contract rights."

■ It is clear from the plain language of the statute that the General Assembly intended to allow the dismissal of credit union officers in spite of any contractual obligations between the parties. This court does not agree with the proposition that R.C. 1733.20(D) prohibits the creation of a contract between a credit union and its officers. The statute states what circumstances do not give rise to a contractual agreement: election or appointment of an officer for a given

term, or general provision in the articles, regulations, or bylaws with respect to term of office. The statute does not prohibit all contracts *per se*. If the General Assembly had intended to ban all employment contracts under this statute, it could have clearly stated this to be so. Instead, the General Assembly chose to eliminate certain actions of a credit union's board from constituting contractual rights.

The rationale of this action can be gleaned from the 1955 Committee Comment concerning R.C. 1701.64(B)(2), which is substantially similar to R.C. 1733.20(D).[1] The comment reads, "The second sentence of paragraph (B)(2) is new, in order to make certain that an officer does not acquire contract rights entitling him to continue in office merely because the articles or the regulations contain a general provision to the effect that officers shall be elected to serve until the next annual meeting and until their successors are elected and qualified, or contain some other general reference to term of office."

■ The first sentence of R.C. 1733.20(D) clearly anticipates that a contract may exist between a credit union and its officers. While an officer may be dismissed regardless of his contractual rights, the statute states the removal is "without prejudice to the contract right of such officer." This court interprets this to mean that while an officer may be removed without cause, the contract rights of said officer, if any, are still alive and subject to enforcement. If the General Assembly chose not to expressly prohibit contracts under R.C. 1733.-20(D), this court will not do so.

■ Furthermore, R.C. 1733.20(D) does not act as a bar to all claims arising from a wrongful discharge situation. To adopt this position would force this court to find that credit unions could practice age discrimination, civil rights violations and other violations of state and federal law with impunity. This court does not find that the General Assembly intended this with enactment of R.C. 1733.20(D). The clear intent of the statute is that a credit union may remove officers in spite of their employment contracts, to effectuate efficient credit union administration. This does not negate any damages arising from breach of contract or violation of law.

---

1. R.C. 1701.64(B)(2) reads in pertinent part:
   "Unless the articles or the regulations otherwise provide * * *:
   " * * *
   "(2) Any officer may be removed, with or without cause, by the directors without prejudice to the contract rights of such officer. The election or appointment of an officer for a given term, or a general provision in the articles, the regulations, or the bylaws with respect to term of office, shall not be deemed to create contract rights[.]"

■ The statute also does not bar actions for intentional tort arising out of the employment relationship. A credit union has the right to dismiss an officer without cause, but it does not have statutory authority to behave fraudulently or act so atrociously that a claim for infliction of emotional distress would succeed. The trial court was proper in refusing defendant's motion for summary judgment as to the contract, fraud and infliction of emotional distress claims.

■ Plaintiff's claim for promissory estoppel is barred by R.C. 1733.20(D) and should be dismissed as a matter of law. This court reviewed the promissory estoppel argument within the framework of R.C. 1701.64(B)(2) in *Gibson v. Beacon Ins. Co. of Am.* (Dec. 21, 1987), Franklin App. No. 87AP–546, unreported, 1987 WL 31241. This court found that since appellant Gibson was an officer of Beacon Insurance, his claim for promissory estoppel was unfounded as the board of directors had the statutory right to remove him any time pursuant to R.C. 1701.64(B)(2). Given the identical language of R.C. 1701.64(B)(2)[2] and R.C. 1733.20(D), this court would be inconsistent to find in any other manner then that a claim for promissory estoppel is barred by R.C. 1733.20(D). This ruling is consistent with the doctrine of promissory estoppel, which arises when a promise is made, where it was intended the promise be relied upon, it was relied upon, and failure to enforce it would bring about injustice, 42 Ohio Jurisprudence 3d (1983) 64, Estoppel and Waiver, Section 42. .Any officer of a credit union is aware, or should be, that he/she can be terminated without cause. While a contract for a certain term may assure the officer of his/her salary or other benefits for a given time, even a contract will not ensure employment. An officer would therefore rely on an employment promise at his/her own risk, given the knowledge he/she could be removed at any time. R.C. 1733.20(D) acts as a bar to a claim based on promissory estoppel between credit unions and their officers.

Defendant's assignment of error is overruled as to plaintiff's contract, fraud and infliction of emotional distress claims. Defendant's assignment of error is sustained as to plaintiff's claim for promissory estoppel.

Plaintiff's first assignment of error argues that the trial court committed reversible error in granting defendant's motion for a directed verdict on plaintiff's breach of contract claim pursuant to R.C. 1733.20(D). The judgment entry of the trial court in regard to the breach of contract claim states:

---

**2.** R.C. 1701.64(B) allows the articles or regulations of a corporation to alter the effects of R.C. 1701.64(B)(2). In the *Gibson* case there is no indication the corporate documents made any alternative provisions. The language of R.C. 1701.64(B)(2) was therefore identical to R.C. 1733.20(D).

" * * * With regard to Count I (Breach of Contract), the Court further finds that the document attached as Exhibit A to the Complaint and identified as Plaintiff's Trial Exhibit No. 13 is not completed and is not signed by either party.

"Therefore, it is hereby ORDERED, ADJUDGED and DECREED that Defendant is entitled to a directed verdict as a matter of law on all counts of the Complaint * * *."

It appears to this court that the trial judge did not issue the directed verdict on the contract claim based on R.C. 1733.20(D), but rather the court utilized a statute of frauds analysis. We have previously discussed the effect of failing to plead an affirmative defense such as the statute of frauds. The record does not indicate that defendant has amended its answer as of trial time to effectively plead this affirmative defense. Furthermore, proper corporate minutes may meet the writing requirements of the statute of frauds. *Soteriades v. Wendy's of Ft. Wayne, Inc.* (1986), 34 Ohio App.3d 222, 517 N.E.2d 1011. The court has reviewed plaintiff's opening statement and finds that the facts stated constitute a cause of action in contract if liberally construed in favor of plaintiff. *Brinkmoeller v. Wilson* (1975), 41 Ohio St.2d 223, 70 O.O.2d 424, 325 N.E.2d 233.

Plaintiff's first assignment of error is sustained.

Plaintiff's second assignment of error argues that the trial court erred in granting a directed verdict on the claims for promissory estoppel, fraud and infliction of emotional distress. The trial court dismissed the claims based on R.C. 1733.20(D). This court has previously discussed the effect of R.C. 1733.-20(D) on plaintiff's claims. Based on the foregoing, plaintiff's second assignment of error is overruled in regard to the promissory estoppel claim but otherwise is sustained.

Plaintiff's first assignment of error is sustained. The second assignment of error is sustained as to the claims for fraud and infliction of emotional distress and overruled as to the claim for promissory estoppel. Defendant's sole assignment of error is overruled in part and sustained in part. This matter is remanded to the trial court for further proceedings in accordance with law and consistent with this opinion.

*Judgment reversed*
*and cause remanded.*

WHITESIDE and TYACK, JJ., concur.